So this case is submitted. We will now hear Hardawan v. Gordon. You're Mr. Luttrell, right? Yes, Your Honor. How much time, if any, would you like to reserve for rebuttal? Two minutes. Two minutes, okay. You may proceed. May it please the Court, I am John Luttrell. I represent Sandy Hardawan, the petitioner in this case. The first issue that we have to address in this case is whether Mr. Hardawan has actually made his showing of innocence as required by Schlott v. Dello. And this requires the Court to do something very unusual in a habeas case. And that's actually to put itself in the shoes of a reasonable juror and make a probabilistic determination about what you would actually do if you were, in fact, that juror. The standard, as was discussed earlier, would any reasonable juror have, at minimum, a reasonable doubt about whether Mr. Hardawan was actually guilty of this offense? Now, there's two theories that have been presented about how he could be guilty. The first is that he is a principal, that he actually participated in the robbery and the assault. I'm not going to spend a whole lot of time on that portion because the district court made a finding of fact which I believe compels the conclusion that any reasonable juror would have, at minimum, a reasonable doubt about his involvement as a principal. I'm going to focus instead today on the getaway driver theory. This was a theory that was presented as part of the federal evidentiary hearing in this case. I don't believe that it was really contemplated at the trial level at all. A couple things bear mentioning about this getaway driver theory. First, it cannot possibly form the basis for liability for assault. The government really has not presented any theory that is plausible under which Mr. Hardawan could be convicted as a getaway driver to assault. Also, that theory was not argued below, so I believe the court shouldn't consider it. If the court agrees with that point, it really need not get further to the point of considering whether Mr. Hardawan would actually be convicted as a getaway driver to the robbery. Let me be sure I understand your argument. You're saying that because there was a conviction on multiple counts, if we were to agree with you that the evidence shows there was actual innocence to any of the accounts, that we don't even need to get to the other accounts. Is that correct? That is my position. Do you have any authority for that position? I do not, because I've never seen a case in which that was the scenario. But the reasoning behind my position is that once the court concludes that Mr. Hardawan was in fact wrongfully convicted, he was actually convicted of an offense that he was not guilty of and the evidence is clear he was not guilty of, it has to conclude that there has been a miscarriage of justice. And when we're talking about the exercise of equity and only for the purpose of allowing Mr. Hardawan to actually go to court, present the merits of his claims, I think the conclusion alone that he was wrongfully convicted of assault, which more than doubled his sentence in this case, would require the exercise of discretion under the actual innocence standard. But turning to the robbery theory, another thing that bears mention about the getaway driver theory is that it's argued in the alternative. This is an approach that would never have been contemplated at the trial level. Where the government does have the burden of proving an offense without reasonable doubt, I find it very unlikely that a prosecutor would actually argue two inconsistent theories of guilt. In this case, Mr. Katz is actually arguing in his briefs and may in fact stand before this court and argue both that Mr. Hardawan actually did this robbery. He was there. He actually participated in that group of people who stabbed and robbed those people on the beach. And he'll argue that even if he didn't do that, that Mr. Hardawan is actually a getaway driver. Presented with two inconsistent theories about how a defendant could be guilty, no reasonable juror would actually find guilt beyond a reasonable doubt on either of those theories. Counsel, forgive me, I find that a startling statement. That happens in every criminal trial where everyone is represented by a good lawyer. There's always inconsistencies, always different theories as to what happened. Isn't that correct? Certainly defense lawyers argue inconsistent theories, but I would find it very unusual for a prosecutor who bore the burden of proving a case beyond a reasonable doubt to argue two inconsistent theories about how the defendant could be guilty. Because in essence, they would be arguing facts that would make either one of the theories that would raise a reasonable doubt about the alternative theory. I've never seen it happen, but I'm a relatively inexperienced lawyer. Well, you're obviously a very fine lawyer. We're delighted to have you here. But let me just raise a few points here that I'd like your response about this getaway car thing. You're treating this as if it were a given, that there's no way there could be a conviction. My notes remind me that your client denied knowing that the robbery was committed until after Tran, who had the loot, got in the car and other evidence supports that he discouraged the robbery. But he admitted, your client admitted to the detective that he asked, you guys did it already when Tran got in the car. When he left the beach, he knew his friends were planning a robbery of the victims on the beach. This is all testimony that came in. Tran ran after the car, implying he wanted to get away quickly. Tran asked Hardewen to bounce, i.e. take off, when he got in the car. And there was evidence that Hardewen learned about the robbery and that Tran had stolen property while he was in the car. Aren't those in the aggregate more than enough to defeat your schlup burden? No, Your Honor. And I think that the question asked by the district court and argued by the attorney generals, are these facts sufficient to sustain the conviction? And perhaps they would be under sufficiency of the evidence standard. But these facts, the court's role at this stage in determining whether this court can have confidence in the validity of this conviction, is whether taking into account all of the evidence, including the bad facts, which the court has certainly encapsulated, as well as the facts which showed that Mr. Hardewen lacked the intent, would a reasonable juror have a reasonable doubt about whether he committed the offense? But counsel, don't you, as defense counsel, bear the burden under schlup to show that no reasonable juror could have so concluded? We don't even reach the equitable estoppel issue unless we find that the schlup gateway has been attained, do we? That's correct, Your Honor. And I think that this, I think we have to address the issue of factual innocence first. I think that based on all of the facts that the court's pointed out, in addition to the facts which, the other facts in the record, including the fact that Mr. Hardewen, when his friend suggested the idea of a robbery, explicitly and unequivocally told his friends that it was a stupid idea, that he wanted no part of it, and he actually left the beach, got in his car, took a left onto the Pacific Coast Highway, and drove away. Well, that was one version of the evidence, but there was the contrary evidence. And the original jury concluded that he was guilty. So, to bring up what was presented in the original trial, and say, gee, the jury got it wrong, don't you have a problem there? Well, two things. One, this was a conviction on a no low contender act, please. There was no trial. Forgive me. We have a lot of cases, and sometimes we tend to forget all the details. The second point is that the facts which the court has mentioned, which the government has argued, are not inconsistent with any of the facts I've just mentioned. They supplement those facts. And so it's not reasonably disputed, unless the court indulges the theory that Mr. Hardewen was actually a principal in the robbery. It's not reasonably disputed that he actually did specifically tell his friends he didn't want to participate, that he did go to his car, that he took a left, and that he was driving away. As he was driving away, Mark Tran ran in front of his car. Again, will you hold that thought, and come back and talk to us again in a minute after your distinguished opposing counsel tells us what the government thinks about this case. Thank you, Your Honor. Deputy Attorney General Michael Katz for responding. Based on the facts of this case, there was no reasonable way that this court could find that appellant has met the Schlecht standard. And I won't restate all the facts that Judge Smith stated. I might have missed this, but in addition to what Judge Smith stated, if he didn't state it already, is this fact, that the defendant appellant admitted that he actually saw his friends approach the group of victims before appellant went to the car. So if you add all that together, and you add his statement to Detective Cooper, that essentially if it were another gang, as the defendant put it, of course he would have to help. So if you add all those facts together, I think there's no way to get around the getaway driver theory. With regard to the liability for assault, respectfully I have to disagree with my opponent, Mr. Luttrell, about whether that's a new point on appeal. Because it was actually appellant who raised, for the first time, as I recall, on appeal, that the assault liability didn't apply because the crime of assault had ended first. Had ended already. That was not raised in the lower court. I don't believe it was, Your Honor. So in response to that, even if it weren't a response to that, the facts are all in the record below. So I don't believe this court is generally inclined to refuse to hear a new argument when it's based on facts that have already been developed below. So I don't think that's a problem in terms of equity. The reason why appellant would be guilty of assault under the getaway driver theory is under California law, a defendant is liable for the natural and probable consequences of his or her crime that he or she aided and abetted. And I cite in our brief a California state case that shows that gang members in similar situations can anticipate this kind of thing. When you expect your fellow gang members to commit a robbery, it's reasonable and very, very likely to believe that during the robbery they're going to assault someone. So even if you didn't believe that the defendant was a perpetrator in the sense of being an active person who used force, you would still have to conclude that he is guilty of all the crimes based on the getaway driver theory. Let's assume for a moment, just so you can elucidate for us, let's assume arguendo, that the defendant were able to cross the schluck gateway. Talk to us about the equitable tolling. What's the government's position on that? Is there any authority for this proposition? That he deserves equitable tolling? The authority is split among the circuits. So in this circuit, it's an open question. But the majority of circuits who've decided this issue have decided in our favor. And the theory is that the reason equitable tolling should not apply is there isn't any other situation that I can think of, and opposing counsel hasn't raised an analogous situation, where a defendant misses the statute of limitations completely through his own fault. He lacks diligence, and there's a dispute in the briefs on this, but the district court has specifically found, and it's finding is entitled to great deference, it's specifically found that the defendant knew, before his no contest plea, of all the predicate facts. So although appellant and defendant now contend that they exercised due diligence, in fact, the district court found the opposite. And under Raspberry, as I understand it, the petitioner must establish that he's pursued his rights diligently, and there were some extraordinary circumstances, or that something has stood in his way. If that's the standard here, can the defendant possibly meet that? He can't, Your Honor. He cannot meet it. So what he's essentially asking this court is to make an exception from all the equitable tolling cases, and say, in this instance, even though he claims he was diligent, but he would go on to say, even if you think he's not diligent, he deserves equitable tolling anyway. And there's no case that says that in this circuit, and the couple circuits that have found equitable tolling in this situation have to reach way out there, as the First Circuit said, and find equitable tolling where he would never find it before. So that's why it shouldn't apply. If I can return back to the factual analysis, there's plenty of evidence that the defendant was, in fact, a direct perpetrator. By the way, they're both called principles under California law, whether it's the getaway driver or not. But there's plenty of evidence that he actually did use force. We like to see people stand on principle. Well, thank you very much. I like to do that. So, in any event, the evidence was this. The victim, Vivian Howell, stated to the investigators initially that she could identify the defendant. In fact, that's in the excerpts of record, the supplemental ones, and you can see how she identified him. Her testimony at the federal evidentiary hearing was, as the magistrate judge found, all over the place. So he made a decision that because he didn't believe her recantation, he couldn't believe anything she said. He didn't, contrary to what my colleague says, he didn't make a factual finding that her recantation was believable. He just didn't believe anything she said because he didn't believe her recantation. That's quite different. And there were plenty of reasons not to believe her recantation. What she did was she got up there and she said she could not remember whether she identified a pellant. Then moments later, Ms. Luttrell asked her a couple questions, and she said, okay, I could identify him, but I felt pressured because I was at work. And when I asked her in cross-examination about whether she was saying that her employer interfered with her identification in a violent crime case, she said, no, actually the reason she couldn't identify the defendant was, or she identified him was because Detective Cooper pressured her. Detective Cooper, who didn't know the defendant at all, and who wrote down in every single instance where any other witness failed to identify a suspect, that just seems unbelievable in a lot of respects. So there's just no reason to believe that her recantation was true. And the magistrate judge didn't believe it himself. If the Court has any questions, I'll be glad to answer them. Otherwise, I'll submit it. I think we do not. Thank you very much for your presentation. Would you like to use your rebuttal time, Mr. Luttrell? Yes, Your Honor. Just briefly, obviously both sides in this case read the record differently, and I won't waste the Court's time discussing my view of the evidence. I would point that in every one of the cases in which the courts, including the Supreme Court, has found that a petitioner has met the Schlupp standard, there has been circumstantial evidence that would support a guilty conviction. House v. Bell, Carriger v. Stewart, there was always circumstantial evidence. But because when actually exposed to an evidentiary hearing and cross-examination, evidence fell apart. Courts held that they couldn't have confidence in the conviction. So while I acknowledge that there is circumstantial evidence that could support a conviction under the sufficiency of the evidence standard, under the correct standard, which I've submitted that the district court did not apply, no reasonable jury would have actually failed to have a reasonable doubt. Counsel, under your standard, though, wouldn't that open up virtually any criminal case where someone could find after some period of time that one of the material witnesses changed his or her mind about some element of the case? Well, as the court has pointed out, the court does have a role in evaluating the credibility of witnesses, evaluating the timing of the submission. And where the evidence is simply not credible, a court need not hold a hearing or consider it at all. Right. It's going to be a rare case where a petitioner can actually make this showing. But where the petitioner does make that showing, the relief is not relief on the merits. It's simply that he gets to present his petition. Doesn't SHLUP really stand for the proposition that we don't want to have a great miscarriage of justice where there's new evidence that comes out that it's very clear that someone has been wrongfully convicted, they're just flat-out innocent, and there's really little question about it. Isn't that what the meaning of SHLUP is? I think that overstates the whole thing in SHLUP. I think what SHLUP, SHLUP is about the exercise of equitable discretion. And what the court said in SHLUP is, if the court can't have confidence in a conviction, then it needs to actually at least allow a review on the merits. And Carriger v. Stewart, a case from this court, specifically says a petitioner doesn't have to affirmatively prove his innocence. Now, I think, and I'll just leave with that. You have something to say? I don't think anybody would suggest he has to affirmatively prove his innocence. I think the problem with your client, he didn't just pick up a person who might have been hitchhiking. He picked up a person who he knew, and who he knew was a part of a group that was planning to do certain acts. Now, he didn't approve of the acts, at least it can be argued that he didn't because he said, don't do it, I'm not going to do it. But when he picked him up, he knew who he was picking up, didn't he? Yes, Your Honor, the answer is yes. The argument is not that he didn't know. The argument is that he did not have the specific intent, which is required under California law. And if I could just have 30 seconds, I wanted to point out Mr. Hardawan made a very important moral choice in this case, to not be a part of this robbery, to walk away. His family is here, and they have every right to be proud of what he did. Considering all of this evidence, including what he did say, and he's acknowledged he did say, I think a reasonable juror that's actually confronted with all this evidence would at least have had a reasonable doubt. Thank you. Any other questions from the panel? Thank you both. The case of Hardawan v. Gordon is submitted.
judges: Farris, Smith, Holland